# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 24, 2013 Session

## JASON FERRELL v. ROBERT MILLER and KAYLA IVEY

**Direct Appeal from the Circuit Court for Montgomery County**
**No. MC-CC-CV-OD-11-1389      Ross Hicks, Judge**

---

**No. M2013-00856-COA-R3-CV -Filed November 27, 2013**

---

While the defendant spouses were separated and living in separate counties, the defendant driver fatally shot himself during a police pursuit while driving a Toyota 4Runner vehicle which was to be awarded to him in the defendants' pending divorce.  Said vehicle struck the plaintiff, allegedly causing serious injuries.  The plaintiff sued the defendant driver alleging negligence, and he sued the defendant spouse on claims of imputed negligence.  Much later, the plaintiff sought to amend his complaint to assert a negligent entrustment claim against the defendant spouse.  Because the plaintiff failed to have appointed, to substitute, and to serve an administrator ad litem prior to the expiration of the statute of limitations, the trial court dismissed the negligence claims against the deceased defendant driver and the imputed negligence claims against the defendant spouse.  It implicitly denied the plaintiff's motion to amend.  We affirm the circuit court's dismissal of the claims against the deceased defendant driver and its dismissal of the imputed negligence claims against the defendant spouse; however, we remand for consideration of the request to add a negligent entrustment claim against the defendant spouse and for express findings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Herbert M. Schaltegger, Thomas R. Lewis, Nashville, Tennessee, for the appellant, Jason Ferrell

J. Matthew Miller, Clarksville, Tennessee, for the appellees, Robert Miller and Kayla Ivey

# OPINION

## I. FACTS & PROCEDURAL HISTORY

Robert Miller and Kayla Ivey (collectively "Defendants") separated in January 2010. A complaint for divorce was filed, and Defendants established separate residences in separate counties. Upon separation, Ms. Ivey continued to live in the marital residence in Robertson County with her grandmother, Mary Simpson, until June 6, 2010. From June 6, 2010 to June 25, 2010, Ms. Ivey resided at a different address, also in Robertson County. From the parties' separation until June 25, 2010, Mr. Miller lived in Montgomery County with his girlfriend, Jessica Smith. In the pending divorce, the Defendants agreed that Mr. Miller would be awarded a 2002 Toyota 4Runner vehicle which was primarily driven by him during Defendants' marriage. Mr. Miller continued to drive this vehicle daily during Defendants' separation.

According to the Affidavit testimony of Mr. Miller's girlfriend, Jessica Smith, on the evening of June 25, 2010, Mr. Miller and Ms. Smith began arguing after consuming much alcohol. Ms. Smith locked Mr. Miller out of a bedroom at the Montgomery County residence, which enraged him and caused him to throw a mattress off of its frame. Underneath the mattress was a pistol belonging to Ms. Smith's husband, which Mr. Miller grabbed, "waved it around in the air . . . . [and then] unexpectedly shot . . . off . . . ." Ms. Smith ran from the residence and Mr. Miller ultimately fled in the 4Runner vehicle. A police chase ensued, and Mr. Miller fatally shot himself during the pursuit. While traveling in a southward direction on 41A Bypass in Montgomery County, the 4Runner vehicle struck a northbound vehicle driven by the plaintiff, Jason Ferrell ("Plaintiff"), which allegedly resulted in serious personal injury to Plaintiff.

On June 20, 2011, Plaintiff filed a Complaint against defendants "Robert Miller and Kayla Ivey" alleging Mr. Miller's negligence, and arguing that Mr. Miller's negligence was imputed to Ms. Ivey based upon her alleged ownership of the vehicle, the Family Purpose Doctrine, or a principal/agent relationship. On November 21, 2011, Ms. Ivey entered a limited appearance in the case, expressly "preserv[ing and asserting] her objections to the jurisdiction of th[e] Court over the persons of the Defendant; to venue; service of process; insufficient service of process; subject matter jurisdiction; and to the failure of Plaintiff's suit to state a claim upon which relief may be granted at law."

On December 13, 2011, Ms. Ivey filed a document styled "Motions, Objections, and Answer" in which she denied Plaintiffs' allegations related to her imputed negligence, she asserted numerous affirmative defenses, and in which she set forth various objections to

Plaintiff's Complaint, such as his alleged failure to properly effectuate service upon her.[1] Ms. Ivey noted Mr. Miller's June 2010 death approximately eight times within the document and she highlighted Plaintiff's failure to appoint and serve an Administrator Ad Litem to preserve his claims against the deceased Mr. Miller. Based upon her argument that the statute of limitations had run as to claims against Mr. Miller, Ms. Ivey moved for dismissal/summary dismissal of the imputed negligence claims against her.

On December 20, 2011, Plaintiff filed a "Motion for Appointment of Administrator Ad Litem" in which he acknowledged that Ms. Ivey's December 13, 2011 Answer "affirmatively aver[red] that Defendant Robert Miller is deceased." Based upon this averment, Plaintiff moved the court to appoint an Administrator Ad Litem to accept service of process "on the apparently-deceased Defendant Miller."

On March 19, 2012, the trial court entered an "Order Appointing Administrator Ad Litem" appointing attorney David J. Silvus "to act as Administrator Ad Litem solely for the purpose of accepting service of process on Defendant Robert Miller." Plaintiff, however, did not amend his Complaint to name the Administrator Ad Litem as a defendant. Instead, on March 28, 2012, Plaintiff simply attempted to serve a copy of the original complaint–naming Mr. Miller as a defendant–upon "Robert Miller c/o Attorney David Silvus[.]" Mr. Silvus, however, declined to accept service because the accompanying complaint was not filed against the Administrator Ad Litem.

Mr. Silvus, according to his Affidavit, then contacted Plaintiff's counsel's firm and conveyed his position that the complaint required an amendment to add the Administrator Ad Litem as a defendant before he could accept service of process. On April 19, 2012, Plaintiff again attempted to serve Mr. Silvus–this time, with a summons issued in the name of "Robert Miller, Deceased, c/o Attorney David Silvus, Administrator Ad Litem[.]" However, Mr. Silvus, again refused to accept service because the complaint accompanying the summons remained the original complaint which did not name the Administrator Ad Litem as a defendant.

Thereafter, on May 30, 2012, Plaintiff, apparently without obtaining leave to amend, filed an Amended Complaint, naming "Estate of Robert Miller, Deceased, and Kayla Ivey" as defendants. Ms. Ivey filed her "Motions, Objections, and Answer to Amended Complaint" on November 7, 2012, claiming, among other things, that Plaintiff had failed to sue the Administrator Ad Litem prior to the running of the statute of limitations. Thus, Ms. Ivey argued, the claims against Mr. Miler were time-barred, and therefore, there was no

---

[1]Ms. Ivey claimed that she had not been personally served, and she attached a "Return on Personal Service of Summons" indicating service upon Mary Simpson on September 22, 2011.

negligence to impute to her. She also filed a "Motion and Memorandum Seeking Dismissal" along with the Affidavits of Kayla Ivey, Jessica Smith, and David Silvus.

Finally, on December 31, 2012, Plaintiff filed a "Motion to Amend" to substitute the Administrator Ad Litem as personal representative for the deceased defendant Robert Miller and to add a claim of negligent entrustment against Ms. Ivey.

On February 1, 2013, the trial court issued its "Memorandum Opinion and Order" granting Ms. Ivey's motion for summary judgment/motion to dismiss, and dismissing Plaintiff's lawsuit in its entirety. The trial court accepted Ms. Ivey's arguments "in toto[,]" specifically finding that "based upon the expiration of the statute of limitations, the failure to sue the proper party, the failure to obtain leave to file an amended complaint, and the inability to impute any negligence to Defendant Ivey, this suit must be dismissed as a matter of law." Additionally, the court found that "irrespective of the foregoing, there is no claim asserted against Defendant Ivey upon which she may be held liable." Plaintiff timely appealed.

## II. ISSUES PRESENTED

Mr. Ferrell presents the following issues for review, as summarized:

1.    Whether the trial court erred in denying Mr. Ferrell's motion to amend his complaint to substitute the Administrator Ad Litem for Robert Miller;
2.    Whether the trial court erred in dismissing the Complaint as to Mr. Miller;
3.    Whether the trial court erred in denying Mr. Ferrell's motion to amend his complaint to add a count of negligent entrustment against Ms. Ivey; and
4.    Whether the trial court erred in dismissing the Complaint as to Ms. Ivey.

For the following reasons, we affirm the circuit court's dismissal of the claims against Mr. Miller and its dismissal of the imputed negligence claims against Ms. Ivey; however, we remand for consideration of the request to add a negligent entrustment claim against Ms. Ivey and for express findings.

### III. DISCUSSION

### *A. Claims Against Robert Miller*

Tennessee Code Annotated section 20-5-103, known as the "Survival Statute," was originally enacted in 1935, and it provides that:

> In all cases where a person commits a tortious or wrongful act causing injury or death to another, or property damage, and the person committing the wrongful act dies before suit is instituted to recover damages, the death of that person shall not abate any cause of action that the plaintiff would have otherwise had, but the cause of action shall survive and may be prosecuted against the personal representative of the tort-feasor or wrongdoer.

**Tenn. Code Ann. § 20-5-103(a)**. Pursuant to this statute, a tortfeasor's death will not terminate a cause of action against him or her. "Operation of the Survival Statute, however does not create a new and independent cause of action, but 'merely preserve[s] the cause of action that belonged to the person before the one who caused the injury died.'" *Liput v. Grinder*, 405 S.W.3d 664, 672 (Tenn. Ct. App. 2013) (citing *Goins v. Coulter*, 185 Tenn. 346, 206 S.W.2d 379, 380 (1947)). "The Tennessee Supreme Court has held that, because the statute provides the exclusive remedy and steps to be followed when such circumstances arise, the steps 'must be strictly followed.'" *Id.* (quoting *Brooks v. Garner*, 194 Tenn. 624, 254 S.W.2d 736, 737 (1953)). "Accordingly, an action preserved by this statute, 'may only be instituted against the personal representative of the tort-feasor.'" *Id.* (quoting *Goss v. Hutchins*, 751 S.W.2d 821, 824 (Tenn. 1988)). If no personal representative exists, however, the injured person may petition the chancery court to appoint an Administrator Ad Litem for the limited purpose of serving as the defendant in the lawsuit. *See Vaughn v. Morton*, 371 S.W.3d 116, 120 (Tenn. Ct. App. 2012) (citing Tenn. Code Ann. § 30-1-109).

In this case, Plaintiff's complaint alleges that the tortious conduct occurred on June 25, 2010. Typically, a personal injury plaintiff has one year in which to file a complaint. *See* **Tenn. Code Ann. § 28-3-104(a)(1)**. However, by operation of law, the statute of limitations is tolled by the death of Mr. Miller. As provided in Tennessee Code Annotated section 28-1-110:

> The time between the death of a person and the grant of letters testamentary or of administration on such person's estate, not exceeding six (6) months . . . is not to be taken as part of the time limited for commencing actions which

lie against the personal representative.[2]

**Tenn. Code Ann. § 28-1-110**. Under the facts here, Tennessee Code Annotated section 28-1-110 tolled the statute of limitations for six months. Thus, accounting for the Christmas holiday, Plaintiff had until December 26, 2011–a six month tolling period following Mr. Miller's death, plus the one year statute of limitations–to have an Administrator Ad Litem appointed, substituted as the defendant, and served with process. However, the Administrator Ad Litem was not appointed until March 19, 2012, and Plaintiff did not seek leave to amend his Complaint to substitute the Administrator Ad Litem as the defendant until December 31, 2012.

On appeal, Plaintiff concedes that he did not timely sue the Administrator Ad Litem, but he argues that his failure to do so should be excused for various reasons.

First, Plaintiff argues that the trial court erred in dismissing his May 30, 2012 Amended Complaint for failing to obtain leave to amend because, he claims, "he inadvertently failed to obtain leave of Court" due to a "simpl[e] [] miscommunication[,]" and because Ms. Ivey was not prejudiced by his oversight. Plaintiff's argument in this respect is curious because his May 30, 2012 Amended Complaint named "Estate of Robert Miller, Deceased, and Kayla Ivey" as defendants–not the Administrator Ad Litem. Notwithstanding issues related to the timing of his Amended Complaint, Plaintiff's May 2012 amendment did not correct the Complaint's fatal flaw because the "Estate" was also an improper party as no estate had been opened. ***See Bryant***, 2009 WL 1065936, at *3 (citing *Goss*, 751 S.W.2d at 824 (finding that pursuant to Tenn. Code Ann. § 20-5-103 suit may only be instituted against the deceased tort-feasor's personal representative and, as such, "the Estate was not a proper party defendant to plaintiff's action"); *McLean v. Chanabery*, 5 Tenn. App. 276 (1926) (an "estate" is not a legal entity and cannot sue or be sued absent certain circumstances such as in a wrongful death action); *Estate of Norton v. Hinds*, 182 Ga. App. 35, 354 S.E.2d 663, 664 (Ga. Ct. App. 1987) (the estate of a dead man is mere inanimate property; consequently, suits to bind the estate of a dead man should be brought in the name of a personal representative–an executor, administrator, etc.); 31 Am.Jur.2d *Executors and Administrators* § 4 ("estate" merely means the assets of the deceased)). Plaintiff's contention that the trial court erred in dismissing his May 30, 2012 Amended Complaint is without merit.

---

[2]The statute also identifies a second six-month period–"the six (6) months within which a personal representative is exempt from suit"–which "is not to be taken as part of the time limited for commencing actions which lie against the personal representative." **Tenn. Code Ann. § 28-1-110**. Plaintiff does not rely upon this tolling period on appeal, and in any event, our Supreme Court has stated that "[i]t would seem . . . that the second six-month period referred to . . . would not be applicable to tort actions." ***Carpenter v. Johnson***, 514 S.W.2d 868, 869 (Tenn. 1974).

Plaintiff next argues that, because no formal suggestion of death was filed, the time period for substituting parties never commenced to run, or, alternatively, that the period for substituting parties should be enlarged pursuant to Rule 6.02.[3]

Rule 25.01 of the Tennessee Rules of Civil Procedure provides that "[i]f a *party* dies and the claim is not thereby extinguished, the court may order substitution of the proper parties[;]" however, the action will be dismissed as to the deceased party "[u]nless the motion for substitution is made not later than ninety (90) days after the death is suggested upon the record by service of a statement of the fact of the death[.]" **Tenn. R. Civ. P. 25.01(1)** (emphasis added). Because Mr. Miller died prior to the filing of Plaintiff's Complaint, Mr. Miller was never a proper party defendant such that Rule 25.01 was implicated. *See generally, Bryant v. Estate of Klein*, No. M2008-01546-COA-R9-CV, 2009 WL 1065936, at *3 (Tenn. Ct. App. Apr. 20, 2009) (noting that an alleged tortfeasor who died prior to the institution of suit was not a proper party defendant).

Assuming *arguendo*, that a suggestion of death was necessary, we find that such was given and that the trial court did not abuse its discretion in refusing to enlarge the substitution period following notice of Mr. Miller's death. As stated above, Ms. Ivey's December 13, 2011document styled "Motions, Objections, and Answer[,]" which was filed prior to the expiration of the statute of limitations, noted Mr. Miller's death no less than eight times, and one week later, also prior to the running of the statute of limitations, Plaintiff filed a "Motion for Appointment of Administrator Ad Litem" in which he acknowledged that Ms. Ivey's Answer "affirmatively aver[red] that Defendant Robert Miller is deceased" and he sought the appointment of an Administrator Ad Litem to accept service of process "on the apparently-deceased Defendant Miller." Moreover, in a subsequent pleading, Plaintiff acknowledged that he was aware of an "absolute statement that Defendant Miller had died" prior to the running of the statute of limitations. Despite this knowledge, however, Plaintiff delayed more than one year–until December 13, 2012–to amend his complaint to substitute the Administrator Ad Litem as personal representative for the deceased defendant Robert Miller. Under these circumstances, again assuming *arguendo* Rule 25.01's applicability, we cannot say that the trial court abused its discretion in refusing to enlarge the substitution period following notice of Mr. Miller's death. *See Maness v. Garbes*, No. M2008-00797-COA-R3-CV, 2009 WL 837707, at *3 (Tenn. Ct. App. Mar. 26, 2009) (citing *Eldridge v. Eldridge*, 42

---

[3]Tennessee Rule of Civil Procedures 6.02 provides in relevant part:
When by statute or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court may for cause shown may, at any time in its discretion . . . (2) upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was the result of excusable neglect.

S.W.3d 82, 85 (Tenn. 2001)) ("Rule 6.02 expressly states that the decision to grant or deny an enlargement of time due to excusable neglect is within the discretion of the trial court; therefore, our review of the trial court's decision is subject to the very deferential abuse of discretion standard, which does not permit this court to substitute its judgment for that of the trial court.").

In sum, we find the trial court did not err in denying Plaintiff's motion to amend, in refusing to enlarge the time period for substituting the Administrator Ad Litem as the defendant, or ultimately, in dismissing the claims against Mr. Miller. Plaintiff had until December 26, 2011 to have an Administrator Ad Litem appointed, substituted as the defendant, and served with process. However, the Administrator Ad Litem was not appointed until March 19, 2012, Plaintiff did not seek leave to amend his Complaint to substitute the Administrator Ad Litem as defendant until December 31, 2012, and the Administrator Ad Litem has apparently never been served with a Complaint naming himself as a defendant. Because Plaintiff failed to follow the steps of the survival statute, Tennessee Code Annotated section 20-5-103, before the expiration of the statute of limitations, if at all, the claims against Mr. Miller are time-barred, and, therefore, we affirm the dismissal of such claims. *See Bryant*, 2009 WL 1065936, at *4.

### B. Claims against Kayla Ivey

On appeal, Plaintiff next argues that the trial court wrongfully dismissed the imputed negligence claims against Ms. Ivey and that it erred in disallowing an amendment to add an independent claim of negligent entrustment against her.

We first address the imputed negligence claims. As stated above, Plaintiff's June 20, 2011 Complaint alleged Mr. Miller's negligent operation of the 4Runner vehicle and it attempted to impute negligence to Ms. Ivey based upon her alleged ownership of the vehicle, an alleged principal/agent relationship, or based upon the Family Purpose Doctrine.

Before this Court, Plaintiff contends, solely based upon his argument that the Complaint should have been amended to add the Administrator Ad Litem as a defendant, that the trial court erred in dismissing the imputed negligence claims against Ms. Ivey. However, based upon our determination that the claims against Mr. Miller were properly dismissed, we must necessarily conclude that the imputed negligence claims against Ms. Ivey were, likewise, properly dismissed. *See Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338 (Tenn. 2002) ("[A] principal may not be held vicariously liable under the doctrine of respondeat superior based on the acts of its agent . . . when the right of action against the agent is extinguished by operations of law[.]") (citing *Rankhorn v. Sealtest Foods*, 63 Tenn. App. 714, 721, 479 S.W.2d 649, 652 (1971)); *Bell v. Brewer*, 1994 WL 592099, at *5 (Tenn.

Ct. App. Oct. 26, 1994) (finding that the owner of a vehicle could not be liable under the Family Purpose Doctrine where the plaintiff's claim against the driver was barred by the statute of limitations).

Finally, we consider whether the trial court erred in refusing to allow Plaintiff to amend his Complaint to add a negligent entrustment claim against Ms. Ivey.[4] A trial court's decision to grant or deny a motion to amend a pleading pursuant to Tennessee Rule of Civil Procedure 15.01 is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Conley v. Life Care Centers of Am., Inc.*, 236 S.W.3d 713, 723 (Tenn. Ct. App. 2007). A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). However, "[w]hile decisions whether to permit an amendment are discretionary . . . Tenn. R. Civ. P. 15.01 substantially lessens a trial court's discretion to deny a requested amendment." *Hardcastle v. Harris*, 170 S.W.3d 67, 80-81 (Tenn. Ct. App. 2004) (citing *Daniels v. Talent*, 212 Tenn. 447, 462, 370 S.W.2d 515, 522 (1963); *Branch v. Warren*, 527 S.W.2d 89, 91-92 (Tenn. 1975)); *see also* Tenn. R. Civ. P. 15.01 ("[L]eave to amend shall be freely given when justice so requires."). A trial court may consider several factors when deciding whether to allow leave to amend a pleading, including "lack of notice, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue delay in the filing of the motion, undue prejudice to the opposing party, and futility of the proposed amendment."[5] *Conley*, 236 S.W.3d at 723-24 (citing *Hall v. Shelby Cnty. Ret. Bd.*, 922 S.W.2d 543, 546 (Tenn. Ct. App. 1995)).

In its February 1, 2013 "Memorandum Opinion and Order," the trial court implicitly denied Plaintiff's motion to amend by dismissing the lawsuit in its entirety. The trial court made limited findings, stating that "based upon the expiration of the statute of limitations, the failure to sue the proper party, the failure to obtain leave to file an amended complaint, and the inability to impute any negligence to Defendant Ivey, this suit must be dismissed as a matter of law. Furthermore, irrespective of the foregoing, there is no claim asserted against Defendant Ivey upon which she may be held liable." Additionally, the trial court adopted "in

---

[4]In her appellate brief, Ms. Ivey argues that the trial court properly denied an amendment to add claims of negligent entrustment and of breach of a "special duty." However, our review of Plaintiff's December 31, 2012 "Motion to Amend," his "Memorandum of Law in Support of Plaintiff's Motion to Amend," and his appellate brief indicates that Plaintiff sought only to add a claim of negligent entrustment.

[5]In *Hardcastle*, the middle section of this Court stated that "the most important [factor] is the proposed amendment's potential prejudicial effect on the opposing party." 170 S.W.3d at 81 (citing 6 Charles A. Wright et al., Federal Practice and Procedure § 1487, at 613 (2d ed. 1990)).

toto the argument and rationale set forth in [Ms. Ivey's] Motion and Memorandum Seeking Dismissal filed . . . on November 7, 2012."

Unfortunately, the trial court's Memorandum Opinion and Order does not explain the grounds on which its implicit denial of Plaintiff's Motion to Amend was based. Moreover, because Ms. Ivey's Motion and Memorandum Seeking Dismissal was filed prior to Plaintiff's Motion to Amend, the trial court's rationale in denying Plaintiff's motion cannot be ascertained by looking to the November 7 document. Our Supreme Court stated in *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 238 (Tenn. 1993), that "in the event [a] motion to amend is denied, the trial court must give a reasoned explanation for his action." "Without this information, this Court cannot discern the reasons behind the trial court's denials, if made, in order to determine whether such constituted an abuse of discretion." *Quinn-Glover v. Regional Med. Ctr. at Memphis*, No. W2011-00100-COA-R3-CV, 2012 WL 120209, at *11 (Tenn. Ct. App. Jan. 17, 2012). Based upon the lack of information in the record, we are obliged to remand for consideration of the request to add a negligent entrustment claim against Ms. Ivey and for express findings.

## IV.   CONCLUSION

For the aforementioned reasons, we affirm the circuit court's dismissal of the claims against Mr. Miller and its dismissal of the imputed negligence claims against Ms. Ivey; however, we remand for consideration of the request to add a negligent entrustment claim against Ms. Ivey and for express findings. Costs of this appeal are taxed equally to Appellees, Robert Miller and Kayla Ivey, and to Appellant, Jason Ferrell, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.